UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOYCE NELSON,             ) | |
|     *Plaintiff*,             ) | |
|                        ) | |
|     *vs*.             ) | 1:12-cv-01385-JMS-MJD |
|                        ) | |
| ALPHA HOME ASSOCIATION OF GREATER IN- ) | |
| DIANAPOLIS, INC.,             ) | |
|     *Defendant*.             ) | |

## **ORDER**

Presently pending before the Court is Defendant Alpha Home Association of Greater Indianapolis, Inc.'s ("Alpha") Motion for Summary Judgment in this reverse discrimination suit under Title VII of the Civil Rights Act of 1964 ("Title VII"). [Dkt. 33.] For the reasons that follow, the Court denies the motion.

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ.

P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is drawn from the admissible evidence submitted by the parties that is either undisputed or viewed in the light most favorable to Ms. Nelson, the non-movant. Because few facts are necessary to understand and decide this motion, the Court provides only a brief factual overview.

Plaintiff Joyce Nelson, who is Caucasian, was hired by Alpha in August 2005. [Dkt. 40-1 at 2.] She was hired as Alpha's Business Manager, which is one of several Department Heads at Alpha. [*Id.*] One of her responsibilities as Business Manager involved administering the payroll for Alpha's employees. [*Id.* at 3.] Ms. Nelson served in the position of Business Manager until her termination on March 13, 2012. [*Id.* at 2.]

During the last four years of her employment, Ms. Nelson was the only Caucasian Department Head at Alpha, and all the Department Heads were directly supervised by Horace Brown. [*Id.* at 2-3; dkt. 40-2 at 6.] Ms. Nelson asserts that during her employment at Alpha she was subject to "comments of a racial nature," and in December 2011, "began to significantly notice and believe that [she] was being treated less favorably than [the] African American Department Heads." [Dkt. 40-1 at 3.] For example, Ms. Nelson attests that Alpha Board President Burks-Craig would "repeatedly berate [her]" and "call [her] a liar," but "would not engage in such behavior toward other Department Heads." [*Id.*] Ms. Nelson informed her supervisor, Mr. Brown of her concerns, but no action was taken. [*Id.*]

Ms. Nelson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Alpha on January 25, 2012. [*Id.* at 3-4.] Both Mr. Brown and Alpha Board President Burks-Craig received copies of her Charge of Discrimination in early February. [*Id.* at 4.] On February 23, 2012, Alpha suspended Ms. Nelson without pay for three days because, according to Mr. Brown, she had shared confidential information from an email with other employees without express approval by Alpha's Board. [*Id.*] However, Ms. Nelson attests that she was never told the information in the email was confidential and nothing in the email itself indicated that the information was confidential or should not be shared with other employees. [*Id.*]

Because of her suspension, Ms. Nelson filed another Charge of Discrimination with the EEOC on March 2, 2012. [*Id.* at 5.] Eleven days later, on March 13, 2012, Ms. Nelson was summoned to a meeting with Mr. Brown and Ann Randall, a member of Alpha's Board. [*Id.*] During the meeting, Mr. Brown asked Ms. Nelson to explain two payroll errors she made regarding two Alpha employees and ultimately informed Ms. Nelson that her employment was being terminated due to these errors. [*Id.*]

Ms. Nelson submits that, by the day of the meeting, she had already informed Mr. Brown of both the payroll errors and corrected them. [*Id.* at 5-6.] Moreover, Ms. Nelson attests that other Department Heads, none of whom were Caucasian, frequently made payroll errors but that Mr. Brown "did not take any disciplinary action against these Department Heads" even though Ms. Nelson would regularly inform him and provide proof of these similar payroll errors. [*Id.* at 7.]

Ms. Nelson filed the instant suit on September 27, 2012, bringing claims of unlawful racial discrimination and retaliation under Title VII. [Dkt. 1 at 4-6.] Specifically, she maintains that both her suspension and termination resulted from unlawful racial discrimination and retaliation by Alpha. [*Id.*]

### III.
#### DISCUSSION

Before delving into the parties' arguments, the Court must address the scope of Alpha's Motion for Summary Judgment. As Ms. Nelson notes, Alpha's opening brief contains only one passing reference to Ms. Nelson's retaliation claim and certainly does not develop an argument as to why summary judgment on that claim is warranted. [Dkt. 39 at 2.] The same is true regarding Ms. Nelson's claim that her *suspension* was the result of unlawful discrimination; Alpha's brief adequately addresses only Ms. Nelson's *termination*. [*Id.*] In light of this, and the

fact that Alpha elected not to file a reply brief in what would have been a belated attempt to develop arguments on either of these issues, the Court need only address whether summary judgment is warranted on Ms. Nelson's Title VII race discrimination claim based on Alpha's termination of her employment. Her retaliation claim and discrimination claim based on her suspension remain unchallenged.

Ms. Nelson can prove unlawful racial discrimination under Title VII using either of two methods: the direct method or the indirect method. *See Silverman v. Bd. of Educ. of the City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011). Although the parties dispute whether she has adduced direct evidence of discrimination, [dkts. 36 at 3; 39 at 17], the Court agrees with Ms. Nelson that her claim survives summary judgment under the indirect method and therefore need not address the direct method.

The indirect method follows the well-established framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first make out a prima facie case of discrimination by showing that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (citation and quotation marks omitted). However, in a reverse discrimination case such as this one, the first factor of the *McDonnell Douglas* framework is altered. Instead of Ms. Nelson, who is Caucasian, having to prove that she is a member of a protected class, she must show "that 'background circumstances' exist to show an inference that the employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something "fishy" about the facts at hand.'" *Balance v. City of Springfield*, 424 F.3d 614, 617

(7th Cir. 2005) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 684-85 (7th Cir. 2003)). "Once a prima facie case is established, a presumption of discrimination is triggered," and "'[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its action." *Coleman*, 667 F.3d at 845 (quoting *McDonnell Douglas*, 411 U.S. at 802). "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a pretext, which in turn permits an inference of unlawful discrimination." *Id.* (citation and quotation marks omitted).

Notably, neither party recognizes or addresses the fact that this is a reverse discrimination case, which, as noted above, alters the required prima face showing. Nevertheless, Alpha only asserts that Ms. Nelson cannot establish the second and fourth elements of the prima facie showing and thus the Court need only address these two elements. [*See* dkt. 36 at 4.] Regarding the second element, Alpha presents the affidavit of Mr. Brown, who asserts that Ms. Nelson was terminated "based upon her inadequate work performance." [Dkt. 35 at 3.] Specifically, Mr. Brown attests that Ms. Nelson's employment was terminated due to errors preparing the payroll for other employees. [*Id.* at 2; *see also* dkts. 35-3; 35-4.] Ms. Nelson does not dispute that she made the payroll errors, but provides evidence that she quickly resolved the payroll issues, that the payroll errors were relatively minor, and, importantly, that similarly situated employees made payroll errors but were not similarly disciplined. [Dkt. 40-1 at 4-6.]

"When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner . . . , the second and fourth prongs of *McDonnell Douglas* merge." *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *see Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010). In other words, the Court must assess whether the employer held similarly situated employees to

disparate performance expectations. *See Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) ("The issue[ is] whether the employer applied its legitimate employment expectations in a discriminatory manner."). The similarly situated inquiry "calls for a 'flexible, common-sense' examination of all relevant factors." *Coleman*, 667 F.3d at 846 (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Id.* (citation and quotation marks omitted). "Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Id.* (citations and quotation marks omitted).

Although Alpha purports to contest whether the other Department Heads are similarly situated, it merely sets forth the legal principles without at all discussing why the other Departments Heads are not similarly situated. [Dkt. 36 at 4-5.] Ms. Nelson, on the other hand, points to evidence demonstrating that other Department Heads were held to different performance expectations than she was. Specifically, Ms. Nelson states in her declaration that, although she was allegedly terminated for payroll errors, it was "common" for other Department Heads—none of whom were Caucasian, [dkt. 40-1 at 2]—to submit erroneous time cards resulting in similar payroll errors, [*id.* at 6]. She further states that other Department Heads would make similar errors "frequently"—on approximately a "bi-weekly basis" since 2008—resulting "in employees initially not being paid correctly." [*Id.* at 5-6.] Furthermore, Ms. Nelson provides evidence that she informed Mr. Brown, who was the direct supervisor of all the Department Heads, [dkt. 40-2 at 6], that other Department Heads were making payroll errors "[o]n numerous occasions," but that he "did not take any disciplinary action against these Department Heads even after [Ms. Nel-

son] would show him the actual time cards which were incorrectly submitted by the respective Department Heads," [dkt. 40-1 at 7].

This undisputed evidence is sufficient to make a prima facie showing that Alpha's legitimate job expectations regarding payroll errors were applied in a racially disparate manner. In short, Ms. Nelson points to undisputed evidence that employees in nearly identical positions (Department Heads), who were directly supervised by the same individual (Mr. Brown), regularly engaged in the conduct for which she allegedly was terminated (payroll errors) but, unlike her, never faced any disciplinary action due to these errors, let alone termination. This is precisely the type of showing required. *See Coleman*, 667 F.3d at 847 ("In the usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'") (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)); *see also Peele*, 288 F.3d at 329. And it is one from which a reasonable jury could infer that Alpha "applied its legitimate employment expectations in a disparate manner." *Peele*, 288 F.3d at 329. Therefore, Ms. Nelson has made a prima facie case of discrimination.

The burden then shifts to Alpha to articulate some legitimate, nondiscriminatory reason for discharging Ms. Nelson. *See Coleman*, 667 F.3d at 845. As discussed above, Alpha's asserted justification is that Ms. Nelson failed to meet its performance expectations. [*See* dkt. 36 at 5.] In cases where this is the proffered justification, the similarly situated inquiry overlaps with the pretext analysis. *See Coleman*, 667 F.3d at 858 ("Where the plaintiff argues that an employer's discipline is meted out in an uneven manner, the similarly-situated inquiry dovetails with the pretext question. Evidence that the employer selectively enforced a company policy against one

[group] but not the other would go to both the fourth prong of the prima facie case and the pretext analysis. Thus, the 'same inquiry into similarly situated employees has been made at the pretext stage.'") (quoting *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir. 1998)). Otherwise stated, "to show pretext (as well as the fourth element of a prima facie case) the inquiry remains the same: the plaintiff must show that similarly situated employees were treated more favorably than the plaintiff." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 985 (7th Cir. 2001). Although Alpha contends otherwise, [dkt. 36 at 5-6], as already established above, Ms. Nelson adduced evidence that similarly situated employees who, like Ms. Nelson, made payroll errors were treated more favorably than her.

But this is not all; Ms. Nelson points to other evidence that would allow a reasonable jury to conclude that Alpha's asserted justification for terminating Ms. Nelson's employment was pretextual and that its true reason was discriminatory. [Dkt. 39 at 22-24.] For example, Ms. Nelson points to the declaration of Michelle Dunn, who was a Department Head at Alpha from 2008 until her termination in 2012. [Dkt. 40-3.] Ms. Dunn attested that "[o]n the day that [Ms.] Nelson was fired Mr. Brown stated to [Ms. Dunn] that he had to 'hurry up and get that white lady out of the building.'" [*Id.* at 3.] Such an explicitly race-related comment made regarding Ms. Nelson's termination, taken together with Alpha's treatment of Ms. Nelson as compared to African American Department Heads, raises a triable issue as to whether Alpha's "'proffered reason was pretextual, meaning that it was a lie.'" *Coleman*, 667 F.3d at 852 (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010)). And when the plaintiff submits sufficient evidence of pretext, this "permits an inference of unlawful discrimination." *Id.* at 845.

Accordingly, summary judgment is not warranted on Ms. Nelson's Title VII race discrimination claim stemming from the termination of her employment from Alpha.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Alpha's Motion for Summary Judgment. [Dkt. 33.] Her claims for reverse race discrimination based on her suspension and termination as well as her retaliation claim, will be presented to a jury for trial.

11/26/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Brian D. Salwowski
b.salwowski@gmail.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES
jhaskin@hlllaw.com

Ryan C. Fox
JOHN H. HASKIN & ASSOCIATES
rfox@hlllaw.com